UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VERNA KEARNEY, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | 3:07-cv-01251 (WWE) |
| | : | |
| CITY OF BRIDGEPORT POLICE | : | |
| DEPARTMENT; CHIEF BRYAN NORWOOD, | : | |
| in his individual and official capacities; | : | |
| LIEUTENANT DAVID DANIELS, in his | : | |
| individual and official capacities, | : | |
|     Defendants. | : | |

**MEMORANDUM OF DECISION ON
DEFENDANTS' MOTION TO DISMISS**

This action arises from plaintiff Verna Kearney's claims that defendants City of Bridgeport Police Department, Chief Bryan Norwood and Lieutenant David Daniels (1) discriminated against her on the basis of her race, color and gender by subjecting her to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) retaliated against her for opposing discriminatory practices; (3) discriminated against her in violation of the Equal Protection Clause of the Fourteenth Amendment to the federal Constitution; and (4) discriminated against her in violation of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a)(3)(4). Now pending before the Court is defendant's Motion to Dismiss (Doc. #28).

The Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1331 as to plaintiff's federal law claims and pursuant to 28 U.S.C. § 1367 as to plaintiff's state law claim.

1

**BACKGROUND**

For purposes of ruling on a motion to dismiss, the Court accepts all allegations of the complaint as true.[1]

Plaintiff is an African-American female residing in the state of Connecticut. She began working for defendant City of Bridgeport Police Department as a police officer in February 1997 as a routine patrol officer. She also served as an instructor at the Bridgeport Police Academy and as booking officer at the Bridgeport Jail.

Defendant Norwood, at all relevant times, was Chief of Police of the City of Bridgeport Police Department. Defendant Daniels was, at all relevant times, plaintiff's immediate supervisor. Defendant Police Department was, at all relevant times, an employer with more than 15 employees.

In March 2001, plaintiff was approached by Captain Radzimirski to direct the Seniors' Program. She was given the title of Director of CARES/TRIAD. Directing the program became a full-time position for plaintiff, and under her leadership, the program grew. During her time as director, plaintiff's performance evaluations were excellent.

On or about August 2006, defendant Daniels informed plaintiff that she would be

---

[1] Plaintiff has submitted exhibits and evidence with her opposition to defendants' motion to supplement her complaint. Because extrinsic evidence outside the complaint is inadmissible in response to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court has disregarded this evidence. See Robinson v. Gov't of Malay., 269 F.3d 133, 141 n.6 (2d Cir. 2001) ("A district court 'may' consult evidence to decide a Rule 12(b)(1) motion in contrast with a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, where it may not."); Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993) (On a Rule 12(b)(6) motion to dismiss, "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken are considered.").

reassigned to work as a School Resource Officer ("SRO") three days per week, but that she would remain at the Seniors' Program for two days per week. Daniels told plaintiff that the reason for this change was that he needed additional resources and was redeploying several officers. Specifically, he needed police officers to do less community work and more traditional police work. In response, plaintiff filed a written discrimination complaint with defendant, alleging that she had been discriminated against based on her race.

On September 12, 2006, a group of seniors approached Bridgeport Mayor John Fabrizi to express their disappointment at plaintiff's removal from the program. Mayor Fabrizi indicated that he had confidence in defendant Norwood's recommendation.

In or about August and September 2006, plaintiff learned that a Hispanic male would be replacing her. On October 10, 2006, she learned that Officer Nick Ortiz would officially be replacing her and be responsible for the Seniors' Program.

Plaintiff claims that the director of the Seniors' Program position was more prestigious than that of an SRO. Plaintiff also alleges that she has fulfilled the requirements to be director while Officer Ortiz does not.

Plaintiff further contends that she became humiliated with how she was treated by Daniels and his superiors for opposing what she believed was employment discrimination. Further, she argues that Daniels made her work environment hostile.

On October 4, 2006, plaintiff wrote to Daniels and Sergeant Meekins, with copies to Mayor Fabrizi and Norwood, that she believed that she was being discriminated against based on her race, color and gender. On October 11, 2006, Daniels informed plaintiff that she was being transferred back to "Patrol" and removed from her director

position.

Plaintiff argues that while she served as director, she accrued compensatory time. When Ortiz took over, however, he was paid overtime pay instead of compensatory time.

Plaintiff asserts that she has exhausted the requisite administrative remedies prior to filing suit.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007) (applying flexible "plausibility standard" to Rule 8 pleading).

## I. Violation of the Title VII

Defendants seek dismissal of count I on the grounds that plaintiff has failed to allege any set of facts that support a claim under Title VII and that plaintiff has failed to

4

describe an adverse employment action. Count I of the complaint alleges that plaintiff's rights under Title VII were violated by the creation of a hostile work environment and the transfer of plaintiff as retaliation for opposing discriminatory practices.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e-2(a)(1).

To state a claim for hostile work environment under Title VII, plaintiff must plead a set of facts that would tend to show a course of conduct "(1) that is objectively severe or pervasive – that is, if it creates an environment that a reasonable person would find hostile or abusive..., (2) that the plaintiff subjectively perceives as hostile or abusive..., and (3) that creates such an environment because of plaintiff's sex [or race]...." Gregory v. Daly, 243 F.3d 687, 691-692 (2d Cir. 2001). Whether a work environment is hostile should be judged on the totality of the circumstances. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). Specifically, the court may examine "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007). To defeat dismissal under Rule 12(b)(6), "plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment ... of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." Id. at 113. The Court of Appeals for the Second Circuit has "cautioned against setting the bar too high" for the plaintiff. Terry v. Ashcroft, 336 F.3d

128, 148 (2d Cir. 2003).

In the instant case, plaintiff's hostile environment allegations are limited to one conclusory statement that defendant Daniels made plaintiff's work environment hostile when she sought clarification as to why she was being transferred from the Seniors' Program to the role of SRO. This allegation fails to meet the standard necessary to defeat a motion to dismiss. Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000) ("[B]ald assertions and conclusions of law will not suffice to state a claim."). In addition, this statement fails to meet the frequency standard and makes no connection to plaintiff's gender or race. Dismissal is therefore appropriate on plaintiff's claim for a hostile work environment.

Plaintiff also alleges that she was retaliated against based on her October 4, 2006 letter to defendants in which she claimed that she was discriminated against based on her race, color, gender and age and that such retaliation violated her rights under Title VII.

In order to establish a retaliation claim under Title VII, plaintiff must show "(1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." Feingold v. New York, 366 F.3d 138, 156 (2d Cir. 2004).

Plaintiff alleges that her October 4 letter was a protected activity and that the employment action that disadvantaged her was her transfer from the director position. The October 4 letter meets the first prong insofar as plaintiff alleges conduct that is proscribed by Title VII. The second prong is met by the removal of plaintiff from, as she

6

claims, a more coveted and prestigious position of director of the Seniors' Program to being a patrol officer. See De La Cruz v. New York City Human Resources Admin. Dep't of Social Servs., 82 F.3d 16, 21 (2d Cir. 1996) (finding that transfer of plaintiff to a less prestigious unit was an adverse employment action even though a "thin" argument). Finally, plaintiff has established the third prong by the temporal proximity between the two events. See Feingold, 366 F.3d at 156 ("[T]he requirement that [plaintiff] show a causal connection between his complaints and his termination is satisfied by the temporal proximity between the two."). Dismissal, therefore, is inappropriate on this count.

## II. Violation of the Fourteenth Amendment to the United States Constitution

Count II of plaintiff's complaint is a tangled web of allegations that the individual defendants violated plaintiff's Fourteenth Amendment rights guaranteed by 42 U.S.C. §§ 1981 and 1983. Although plaintiff titled count II as under the Equal Protection Clause, several of her claims assert due process violations.

### A. Contract Claims

First, plaintiff alleges that defendants Norwood and Daniels interfered with plaintiff's right to contract because of her race under the collective bargaining agreement ("CBA") in place between plaintiff, her union and the Bridgeport Police Department. Because there are no allegations in the complaint regarding plaintiff's rights under the CBA or how defendants interfered with such rights, dismissal is appropriate on this charge. The Court, however, will grant plaintiff leave to replead this charge.

### B. First Amendment Claim

Second, plaintiff alleges that defendants acted in retaliation against plaintiff for exercising her First Amendment rights. Presumably, these rights are related to her written complaint of discrimination and the October 4 letter, the only instances of speech included in the complaint.

Courts have recognized the rights of government employees as public citizens to free speech, but have balanced that right with the government's interest in "promoting efficient public service by its employees." Hale v. Mann, 219 F.3d 61, 70 (2d Cir. 2000); see also Garcetti v. Ceballos, 547 U.S. 410, 423 (2006) ("When an employee speaks as a citizen addressing a matter of public concern, the First Amendment requires a delicate balancing of the competing interests surrounding the speech and its consequences."). Therefore, in certain instances, the government may regulate and act against its employees' speech.

To establish a claim that she was retaliated against for her speech, plaintiff must show that (1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest; (2) she suffered an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the adverse employment action. Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir. 2003). Speech is in a matter of public concern if relates "to any matter of political, social, or other concern to the community." Connick v. Myers, 461 U.S. 138, 146 (1983).

The Court of Appeals for this circuit has recognized that "[w]hether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement

8

as revealed by the whole record." Lewis v. Cowen, 165 F.3d 154, 163 (2d Cir. 1999). Where the speech is on a matter of personal interest only, the "government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary...." Connick, 461 U.S. at 146. Speech that is meant to air or redress personal grievances is not protected under the First Amendment as not a matter of public concern. Lewis, 165 F.3d at 163-64. Because the speech in this case was solely related to personal, not public, matters, it is not protected by the First Amendment, and dismissal is appropriate on this charge. See Ruotolo v. City of New York, 514 F.3d 184 (2d Cir. 2008) (affirming dismissal where speech was related to personal grievance).

### C. Due Process Violation

Next, plaintiff alleges that she was deprived of her due process rights and her equal protection rights by her transfer and that such transfer was based on her race and gender, as evidenced by her replacement by a male Hispanic co-worker. Further, similarly-situated white and Hispanic employees were not similarly treated. Finally, this was the result of defendant Police Department's failure to train and supervise its employees.

To the extent that plaintiff makes a claim under the Due Process Clause, such claim must fail. An employee's due process rights may be violated only if she has a property right in his continued employment as determined by an independent source, such as state law. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985). While plaintiff alleges that she held a property interest in her continued employment, she neither provides nor points to any law, case, statute, city charter, contract or collective bargaining agreement which provides or defines that right. See Levesque v.

9

Town of Vernon, 341 F. Supp. 2d 126 (D. Conn. 2004) (reviewing town charter to determine employee's property interests in continuing employment); see also Conn. Gen. Stat. § 7-474(f) (providing that a collective bargaining agreement supercedes a municipal charter on certain employment matters). Therefore, dismissal is appropriate on this claim.

Further, "assignments and transfers generally do not implicate a protected property interest for the purposes of due process, unless accompanied by a loss in pay." Lynch v. McNamara, 342 F. Supp. 2d 59, 65-66 (D. Conn. 2004); see also Ferraro v. City of Long Branch, 23 F.3d 803 (3d Cir. 1994) (affirming dismissal of due process charge because transfer with a loss of responsibilities did not implicate property right); Huang v. Bd. of Governors, 902 F.2d 1134, 1142 (4th Cir. 1990) (transfer or interdepartmental demotion, without loss of rank or pay, does not impinge upon a property interest). Because plaintiff has not alleged any loss in pay or rank, dismissal is appropriate on plaintiff's due process challenge.

### D. Failure to Train or Supervise

In addition, plaintiff cannot maintain an action against the individual defendants for failure to train or supervise employees as she has not sufficiently asserted any facts that would support such a claim.

### E. Equal Protection Violation

To the extent that plaintiff asserts a class of one theory insofar as she alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," Willowbrook v. Olech, 528

10

U.S. 562, 564 (2000), the Supreme Court has recently held that an action based on a "class of one" theory cannot be maintained in the public employment context. See Engquist v. Or. Dep't of Agric., 128 S. Ct. 2146 (2008). A "class of one" claim is thus inappropriate in this case.

Finally, as to plaintiff's claims that her equal rights were violated, plaintiff has sufficiently alleged that she was treated differently on account of her race or gender by defendant Daniels. To survive a motion to dismiss on an Equal Protection Claim, plaintiff need only "meet the standard set forth in Fed. R. Civ. P. 8(a), which requires a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Williams v. N.Y. City Hous. Auth., 458 F.3d 67, 71-72 (2d Cir. 2006). Specifically, plaintiff has sufficiently alleged that she is a black, African-American woman who has been subject to an adverse employment decision.

Such claims, however, can go forward under section 1983 only against Daniels in his individual capacity. Hafer v. Melo, 502 U.S. 21 (1991). To state a claim for relief under section 1983, plaintiff must allege that defendants, acting under color of state law, deprived her of a constitutionally or federally protected right. See Lugar v. Edmondson Oil Co., 457 U.S. 922, 930 (1982); Washington v. James, 782 F.2d 1134, 1138 (2d Cir. 1986). An individual acts under color of state law when he exercises "some right or privilege created by the State ... or by a person for whom the State is responsible," and is "a person who may fairly be said to be a state actor." Lugar, 457 U.S. at 937. Generally, a public employee acts under color of state law when he acts in his official capacity or exercises his responsibilities pursuant to state law. See West v. Atkins, 487 U.S. 42, 50 (1988). Here, there are sufficient allegations in the complaint to

set forth a claim under section 1983 as to Daniels.

As to defendant Norwood, the complaint alleges liability based on a theory respondeat superior. Liability under section 1983 cannot arise under a theory of respondeat superior on a defendant who acts solely in a supervisory capacity. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (discussing municipal liability). Plaintiff must allege the supervisor's personal involvement in the illegal conduct. Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 254 (2d Cir. 2001). As the Court of Appeals for this Circuit has previously stated:

> "Personal involvement" is not limited to direct participation by the supervisor in the challenged conduct, but may also be established by evidence of an official's (1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates.

Hayut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir. 2003).

To the extent that plaintiff has alleged any actions by Norwood that violated her rights, these allegations are based on conclusory statements as well as bald assertions that cannot defeat a motion to dismiss. Plaintiff's allegations that there was a policy or custom against African-American females is unsupported by any other allegation in the complaint. In addition, there is no allegation that Norwood knew of any of Daniels' alleged wrongful conduct. Therefore, the motion will be granted as to defendant Norwood.

**III.    Claims under Connecticut Law**

Claims under CFEPA are analyzed in the same manner as those under Title VII.

Brittell v. Dep't of Correction, 247 Conn. 148, 164 (1998).  Therefore, plaintiff's hostile work environment claim under Conn. Gen. Stat. § 46a-60(a) will be dismissed, but her retaliation claim can survive.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss (Doc. #28) is GRANTED in part and DENIED in part.  Plaintiff is instructed to amend her complaint consistent with this ruling within ten days.

Dated at Bridgeport, Connecticut, this 30th day of July, 2008.

>　　　　　/s/
> Warren W. Eginton
> Senior United States District Judge